**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:26-cv-61499-WPD

AZG ENTERPRISES, INC.,

Plaintiff,

v.

ACD LOGISTICS, LLC a/k/a ACDL LLC,
BENJAMIN ANTHONY, DANIEL CATONE,
ARJUN DHILLON,

Defendants.

**DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT .......... 1

II. STATEMENT OF FACTS .......... 4

III. THIS COURT LACKS PERSONAL JURISDICTION OVER ANTHONY AND CATONE UNDER RULE 12(b)(2) .......... 7

IV. THE COMPLAINT FAILS TO STATE A CLAIM UNDER RULE 12(b)(6) .......... 10

V. MOVING DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES PURSUANT TO THE SEPARATION AGREEMENT INDEMNIFICATION AND FLORIDA STATUTE § 772.11 .......... 14

VI. CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**Cases**

*Abdo v. Abdo*, 263 So. 3d 141, 145 (Fla. 2d DCA 2018) ............................................................ 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................... 4, 9, 10

*Astro Aluminum Treating Co. v. Inter Contal, Inc.*, 296 So. 3d 462 (Fla. 4th DCA 2020)........ 3, 8

*Banco de los Trabajadores v. Moreno*, 237 So. 3d 1127, 1135 (Fla. 3d DCA 2018) ................ 8, 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 4, 10

*BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332 (S.D. Fla. 2021) ............................................ 13

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 856 (11th Cir. 1990).......... 7

*Calder v. Jones*, 465 U.S. 783, 790 (1984)........................................................................... 6

*Doe v. Thompson*, 620 So. 2d 1004, 1005 (Fla. 1993) ................................................................. 9

Fla. Stat. § 672.201(3)(c) ........................................................................................... 13

*Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008) ..................................... 10

*Island Travel & Tours Ltd. Co. v. MYR Independent, Inc., 307 So. 3d 829 (Fla. 3d DCA 2020)* 16

*Kitroser v. Hurt*, 85 So. 3d 1084 (Fla. 2012)............................................................................ 9

*Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017)......................................................................... 13

*Lanchile Airlines v. Conn. Gen. Life Ins. Co.*, 759 F. Supp. 811, 814 (S.D. Fla. 1991)............... 11

*NorthStar Moving Holding Co. v. NorthStar Movers*, No. 19-62176-CIV, 2020 U.S. Dist. LEXIS 2998, at *5 (S.D. Fla. Jan. 7, 2020) ........................................................................ 10

*Prosegur Sec. USA v. Glob. Elite Grp., Inc.*, 2024 U.S. Dist. LEXIS 17400, at *4 (S.D. Fla. 2024)......................................................................................................... 7

*Shaver L. Grp. LLC v. Concorde Inv., LLC*, 796 F. Supp. 3d 1349, 1353 (S.D. Fla. 2025) .......... 7

*St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) ......................................................... 12

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006) ........ 7

*Tew v. Chase Manhattan Bank, N.A.*, 728 F. Supp. 1551, 1560 (S.D. Fla. 1990) ........ 11

*Thorpe v. Mem'l Sloan-Kettering Cancer Ctr.*, 412 So. 3d 861, 872 (Fla. 2025) ........ 8

*Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) ........ 13

*Walden v. Fiore*, 571 U.S. 277, 284-85 (2014) ........ 3, 9

*Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) ........ 10

**Statutes**

Fla. Stat. § 48.193(1)(a) ........ 7, 8

Fla. Stat. § 672.201(1) ........ 4, 13

Fla. Stat. §§ 812.014 ........ 10

Florida Statute § 772.11 ........ 10, 12, 16

Wyo. Stat. § 17-29-301 ........ 9

**Rules**

Rule 12(b)(2) ........ 1, 16

Rule 12(b)(6) ........ 1, 17

Defendants Benjamin Anthony ("Anthony") and Daniel R. Catone ("Catone," and together with Anthony, the "Individual Defendants"), joined in part by Defendant ACD Logistics, LLC ("ACD Logistics" or the "Company," and collectively with the Individual Defendants, "Moving Defendants") as specified below, respectfully submit this memorandum of law in support of their motion to dismiss the Complaint of Plaintiff AZG ENTERPRISES, INC. pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), and state as follows.

## I. PRELIMINARY STATEMENT

The claims against ACD Logistics, LLC, Benjamin Anthony, and Daniel Catone are frivolous and must be dismissed in their entirety, because Plaintiff has sued the wrong parties, substituting three defendants for the one man, Arjun Dhillon, whose sole admitted misconduct gave rise to every allegation in this Complaint.

Every specific factual allegation of wrongdoing in the Complaint traces back to Dhillon alone: his written acknowledgment of the alleged shortfall, his personal guarantee, his repeated promises of repayment, and his $45,000 worthless check. Each of those events occurred after December 8, 2025, the effective date of the Separation Agreement and Release by which Dhillon was involuntarily removed as a member, manager, and officer of ACD Logistics for cause. Nothing in the Complaint accounts for this timeline.

Plaintiff attempts to obscure that reality through group pleading, lumping Anthony, Catone, and ACD Logistics together with Dhillon under the collective label "Defendants" without ever identifying a single act, communication, or decision that any of them personally made. That pleading device cannot survive scrutiny. When the Complaint is read count by count, defendant by defendant, every specific allegation of wrongdoing points to one person: Dhillon. He made the representations about the merchandise. He acknowledged the shortfall in writing. He executed the

personal guarantee. He made the promises of repayment. He wrote the worthless check. Anthony and Catone are named nowhere in those allegations, because they did none of those things. Neither is ACD Logistics. The Complaint does not allege that the Company directed the misrepresentations, authorized the guarantee, approved the repayment promises, or had any knowledge of or involvement in Dhillon's post-removal conduct. It alleges only that ACD Logistics received a wire transfer, a transaction that on the face of the Complaint was directed and controlled by Dhillon alone, without authorization, at a time when he was actively concealing from his co-members the very obligations he was incurring. The only "evidence" connecting Anthony, Catone, and the Company to Dhillon's conduct is the fact that they were once his co-members in the LLC. That is not a basis for liability. It is a placeholder for one.

The Separation Agreement and Release executed by Dhillon, Anthony, and Catone effective December 6, 2025 (Ex. A to the Declaration of Benjamin Anthony ("Anthony Decl.")), leaves no room for ambiguity. Dhillon expressly admits to commingling Company funds with his personal funds, using Company funds for personal expenses without disclosure or authorization, and incurring debt obligations outside the scope of his authority. (Separation Agreement § 2.) He irrevocably transferred his entire membership interest to the Company and agreed to indemnify the Company and its remaining members against precisely the claims asserted in this action, including any liability arising from litigation triggered by his own misconduct. (Separation Agreement §§ 3, 5.) He further acknowledged personal responsibility for all obligations entered in his individual capacity, including those he guaranteed. (Separation Agreement § 7.) Critically, the Complaint alleges that Dhillon, Anthony, and Catone are presently "each members (representing 100% of the membership interest)" of the Company. (Compl. ¶ 11.) That allegation is directly contradicted by the Separation Agreement, which terminated Dhillon's membership months before

this action was filed. Plaintiff either knew or should have known that Dhillon's membership had been extinguished, yet built its entire theory of joint liability on a premise the documentary record refutes.

As a threshold matter, this Court lacks personal jurisdiction over Anthony and Catone. Neither resides in Florida. Anthony resides in West Lafayette, Indiana and Catone resides in Powell, Wyoming. Neither is alleged to have traveled to Florida, transacted business here, or directed any act or communication into this State. (Anthony Decl. ¶¶ 15-19; Declaration of Daniel Catone ("Catone Decl.") ¶¶ 15-19.) The only Florida connection anywhere in the case is Plaintiff's own decision to wire funds from this District to the Company, a unilateral act by Plaintiff that cannot, as a matter of settled constitutional law, be used to haul two out-of-state individuals before this Court. *See Walden v. Fiore*, 571 U.S. 277, 284-85 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum."). Because Anthony's and Catone's individual contacts with Florida are nonexistent, they must be dismissed from this action in their entirety.

Moving Defendants also join in asserting that this Court lacks personal jurisdiction over ACD Logistics. The Company is a Wyoming LLC with its principal place of business at 254 E. 2nd Street, Powell, Wyoming 82435. It did not solicit Plaintiff in Florida, maintain operations in Florida, or direct any communications into Florida. The relevant performance under the alleged contract occurred outside Florida, including a December 10, 2025 shipment of approximately twenty packages totaling approximately 400 pounds to Winchester, Virginia. (Anthony Decl. ¶ 6.) *See Astro Aluminum Treating Co. v. Inter Contal, Inc.*, 296 So. 3d 462 (Fla. 4th DCA 2020) (no jurisdiction under Fla. Stat. § 48.193(1)(a)(7) where contract did not require Florida performance).

Even if the Court reaches the merits, the Complaint independently fails. Plaintiff asserts six causes of action, three against all defendants and three against Dhillon individually. Count III,

alleging breach of an oral contract for the sale of $91,650 in goods, is presumptively barred by Florida's Uniform Commercial Code statute of frauds, which requires a writing for any contract for the sale of goods exceeding $500. Fla. Stat. § 672.201(1). As against Anthony and Catone individually, Counts I and IV rest on nothing more than conclusory, group-pleaded assertions of collective wrongdoing that fall well short of the pleading standards required under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Stripped of its legal conclusions, the Complaint contains no factual allegation that either Anthony or Catone personally participated in, directed, or benefited from the conduct underlying those counts.

For all of these reasons, Moving Defendants respectfully request: dismissal of Anthony and Catone in their entirety for lack of personal jurisdiction; dismissal of ACD Logistics for lack of personal jurisdiction; and, in the alternative, dismissal or narrowing of the surviving claims as set forth below.

## II. STATEMENT OF FACTS

For purposes of this motion, Moving Defendants accept the Complaint's well-pleaded factual allegations as true as to Dhillon, but not its legal conclusions or its undifferentiated references to "Defendants" collectively, and specifically contest all allegations asserted against the ACDL Defendants. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

***The Transaction***

In November 2025, Plaintiff reached out to the Company seeking to purchase certain trading cards. (Compl. ¶ 12.) Plaintiff alleges that it and "Defendants" entered into an oral agreement to purchase those cards for $91,650. (Compl. ¶¶ 14-15.) The Complaint does not identify which individual communicated or negotiated with Plaintiff. The Complaint does not allege that Anthony or Catone personally participated in, was aware of, or authorized these

negotiations. In fact, Anthony and Catone had no knowledge of, and no participation in, those communications. (Anthony Decl. ¶¶ 8-9, 11-15; Catone Decl. ¶¶ 8-9, 11-15.) On November 28, 2025, AZG wired $91,650 to the Company's bank account. (Compl. ¶ 15.) The Company subsequently shipped products to Winchester, Virginia, not to Florida. (Anthony Decl. ¶ 6.)

**1. The Separation Agreement**

Around this same time, Anthony and Catone concluded that Dhillon had engaged in conduct warranting his removal as a member of the Company. (Separation Agreement, Recitals.) On December 6, 2025, the Company's members voted 66-34 to involuntarily remove Dhillon as a Member for cause, terminating his membership, management authority, and all officer positions, and leading to Anthony and Catone's acquisition of his membership interest. (Separation Agreement §§ 1, 3; Ex. A (ACD Meeting Minutes, Dec. 6, 2025).)

In the Separation Agreement, Dhillon expressly admitted, acknowledged, and agreed that during his involvement with the Company he engaged in conduct including commingling Company funds with his own, using Company funds for personal expenses without disclosure or authorization, and incurring debt obligations in his own name without full Company approval. (Separation Agreement § 2.) Dhillon agreed that his admissions are "final, binding, and admissible in any judicial, arbitral, administrative, or regulatory proceeding." (*Id.*) The Separation Agreement further provides that the Company expressly did not release Dhillon from any claim arising out of his misconduct, including unauthorized loans, misappropriation of Company funds, and any matter for which Dhillon is obligated to indemnify the Company. (Separation Agreement § 7.) Dhillon further agreed to broadly indemnify the Company and its members, managers, and officers for losses arising from his acts, including any obligation or transaction he personally guaranteed.

(Separation Agreement §§ 5, 7.) The Separation Agreement was executed by Dhillon, Catone, and Anthony on December 8, 2025.

**2. Dhillon's Individual Conduct Following the Separation Agreement**

Six days after his removal, on December 12, 2025, Dhillon presumably individually acknowledged in writing to Plaintiff that $55,000 remained outstanding and that a refund was forthcoming. (Compl. ¶ 17.) On January 7, 2026, the Complaint alleges Dhillon executed a Personal Guarantee that, by its own terms as quoted in the Complaint, was given "solely in connection with . . . an orderly business separation, restructuring, or transition involving the Obligor and ACD Logistics LLC." (Compl. ¶¶ 18-19.) That language, drawn directly from the Guarantee, confirms that the separation had already occurred and that the undertaking was Dhillon's personal obligation, consistent with the Separation Agreement's recognition that Dhillon remained personally liable for transactions he personally guaranteed. (Separation Agreement § 7.) On February 26, 2026, nearly three months after his removal, Dhillon wrote a $45,000 check on his personal account, which was returned for insufficient funds. (Compl. ¶¶ 47-48.)

The Complaint does not allege that Anthony or Catone individually committed any tortious act, formed a contract, or failed to perform any contractual obligation in the State of Florida. Anthony resides in West Lafayette, Indiana. (Anthony Decl. ¶ 1.) Catone resides in Powell, Wyoming. (Catone Decl. ¶ 1.) Neither Anthony nor Catone has traveled to Florida, contracted in Florida, or directed any communications into Florida in connection with this matter. (Anthony Decl. ¶¶ 15-19; Catone Decl. ¶¶ 15-19.) All facts supporting Plaintiff's claims of breach of contract and civil theft are attributable to Dhillon alone. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) (jurisdiction over each defendant must be assessed individually based on that defendant's own contacts, not the contacts of a co-defendant). Dhillon communicated directly with Plaintiff

regarding the purchase of the cards. Anthony and Catone had no personal contact with Plaintiff at any time. (Anthony Decl. ¶¶ 15-19; Catone Decl. ¶15-19.) The Complaint's entire post-wire narrative, including the shortfall acknowledgment, the Guarantee, the repayment representations, and the dishonored check, describes only Dhillon's conduct. (Compl. ¶¶ 17-23.) Anthony and Catone are never named in connection with any of it, and they had no personal involvement. (Anthony Decl. ¶¶ 8-9, 11-15, 17-19; Catone Decl. ¶¶ 8-9, 11-15, 17-19, 20.)

## III. THIS COURT LACKS PERSONAL JURISDICTION OVER ANTHONY AND CATONE UNDER RULE 12(b)(2)

### A. Legal Standard

The Court conducts a two-step inquiry, asking (1) whether Florida's long-arm statute provides a basis for jurisdiction, and (2) whether the exercise of jurisdiction comports with due process. *Prosegur Sec. USA v. Glob. Elite Grp., Inc.*, 2024 U.S. Dist. LEXIS 17400, at *4 (S.D. Fla. 2024). Plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over each defendant. *Shaver L. Grp. LLC v. Concorde Inv., LLC*, 796 F. Supp. 3d 1349, 1353 (S.D. Fla. 2025). The prima facie case requires sufficient evidence to withstand a motion for directed verdict, and conclusory allegations do not suffice. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). Florida courts strictly construe the long-arm statute in favor of the nonresident defendant. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 856 (11th Cir. 1990); *Abdo v. Abdo*, 263 So. 3d 141, 145 (Fla. 2d DCA 2018).

### B. Florida's Long-Arm Statute Is Not Satisfied as to the Individual Defendants

Personal jurisdiction over Anthony and Catone cannot be established under Florida's long-arm statute, Fla. Stat. § 48.193(1)(a), because the Individual Defendants have no contacts with this forum. Florida's long-arm statute requires two showings for specific jurisdiction: (i) that the defendant committed one of the enumerated acts in Florida, and (ii) that the plaintiff's cause of

action "arises from" that Florida activity. *Banco de los Trabajadores v. Moreno*, 237 So. 3d 1127, 1135 (Fla. 3d DCA 2018).

**1. No Tortious Act in Florida.**

The Complaint alleges in paragraph 9 that personal jurisdiction exists because "Defendants" committed a "tortious act" and "breached a contract" in this State. That paragraph is not sufficient to establish personal jurisdiction over Anthony and Catone specifically. A complaint's bare invocation of a long-arm provision is a legal conclusion that courts disregard. *Thorpe v. Mem'l Sloan-Kettering Cancer Ctr.*, 412 So. 3d 861, 872 (Fla. 2025). The Complaint does not allege that Anthony or Catone individually committed any tortious act in Florida. All facts supporting Plaintiff's claims are attributable to Dhillon alone. Under Florida law, a tortious act committed by a nonresident must occur within the state, not merely cause injury felt by a Florida resident. *Id.* No Florida-directed act by Anthony or Catone is alleged anywhere in the Complaint.

**2. No Contract Breach in Florida.**

Section 48.193(1)(a)(7) reaches a nonresident defendant who breaches a contract "by failing to perform acts required by the contract to be performed in this state." The Complaint identifies no act that either Anthony or Catone individually was required to perform in Florida. The Company's performance occurred in Virginia, not Florida. *See Astro Aluminum Treating Co. v. Inter Contal, Inc.*, 296 So. 3d 462 (Fla. 4th DCA 2020).

**3. Plaintiff's Unilateral Wire Is the Only Florida Connection.**

A plaintiff's unilateral decision to send money from its home state to a nonresident defendant does not make Florida the locus of the defendant's conduct. *Thorpe*, 412 So. 3d at 872. Passive membership in a Wyoming LLC is not purposeful availment of the privilege of conducting

activities in Florida. *Doe v. Thompson*, 620 So. 2d 1004, 1005 (Fla. 1993). Membership in an LLC does not by itself make a member the company's agent. Wyo. Stat. § 17-29-301.

**4. No Jurisdictional Basis for Count IV.**

Paragraph 9 of the Complaint does not allege a jurisdictional basis tied to the unjust enrichment claim (Count IV). An unjust enrichment theory alone does not supply the connexity the statute requires. *Banco de los Trabajadores*, 237 So. 3d at 1135.

**C. Exercise of Jurisdiction Would Violate Due Process**

Due process requires a relationship arising from contacts that the defendant himself creates with the forum. *Walden v. Fiore*, 571 U.S. 277, 284-86 (2014). Plaintiff's contacts with Florida cannot manufacture jurisdiction over two individuals with no independent connection to this forum. Paragraph 8 of the Complaint recites in conclusory terms that "Defendants have maintained sufficient minimum contacts with this State." (Compl. ¶ 8.) That is a legal conclusion entitled to no presumption of truth. *Iqbal*, 556 U.S. at 678. The only factual allegation that could conceivably bear on Anthony's or Catone's contacts with Florida is that Plaintiff wired funds from this District, a fact about Plaintiff's own conduct that *Walden* squarely forecloses as a basis for jurisdiction. 571 U.S. at 284-86.

**D. The Corporate Shield Doctrine Independently Bars Jurisdiction**

Florida's corporate shield doctrine provides an independent basis for dismissal. A member acting on behalf of an entity is shielded from personal jurisdiction based solely on acts undertaken in a representative capacity, with an exception only where the member personally commits an intentional tort. *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993); *Kitroser v. Hurt*, 85 So. 3d 1084 (Fla. 2012). The Complaint does not plausibly allege that Anthony or Catone personally committed any intentional tort. Every specific factual allegation of wrongdoing is attributed to

Dhillon, after his removal from the Company. All claims against Anthony and Catone must therefore be dismissed for lack of personal jurisdiction.

## IV. THE COMPLAINT FAILS TO STATE A CLAIM UNDER RULE 12(b)(6)

### A. Legal Standard

To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. Where a complaint lumps multiple defendants together in group allegations without differentiating which defendant is alleged to have done what, it fails to give each defendant fair notice and does not satisfy federal pleading requirements. This Complaint is a paradigm shotgun pleading. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015); *NorthStar Moving Holding Co. v. NorthStar Movers*, No. 19-62176-CIV, 2020 U.S. Dist. LEXIS 2998, at *5 (S.D. Fla. Jan. 7, 2020).

### B. Count I Fails to State a Claim for Civil Theft as to All Moving Defendants

To state a claim for civil theft, a plaintiff must plausibly allege that the defendant (1) knowingly obtained, used, or endeavored to obtain or use the plaintiff's property (2) with felonious intent, either temporarily or permanently, to deprive the plaintiff of its right to the property or to appropriate it to the use of a person not entitled to it. Fla. Stat. §§ 812.014, 772.11; *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008). Civil theft ultimately requires proof by clear and convincing evidence, and a complaint that cannot plausibly allege felonious intent under the ordinary Rule 8 standard falls drastically short.

***As to Anthony and Catone***

The Complaint fails on both elements. On the first element, the Complaint does not allege that Anthony or Catone knowingly obtained, used, or endeavored to obtain or use any of Plaintiff's

property. The Complaint's entire theft narrative, including the shortfall acknowledgment, the Guarantee, the repeated assurances, and the worthless check, describes only Dhillon's conduct. (Compl. ¶¶ 17-23.) Anthony and Catone are never named in connection with any of it.

On the second element, paragraph 21's allegation that "Defendants falsely represented" and paragraph 22's allegation that "Defendants lied to Plaintiff" are precisely the sort of conclusory, group-pleaded assertions that *Twombly* and *Iqbal* reject. Neither allegation identifies any act, statement, or intent particular to Anthony or Catone. The Individual Defendants never personally communicated with Plaintiff, so it is not merely unpled but factually impossible that either falsely represented or lied about anything to AZG. (Anthony Decl. ¶¶ 8-9, 11-15, 17-19; Catone Decl. ¶¶ 8-9, 11-15, 17-20.) Dhillon's own admissions in the Separation Agreement affirmatively confirm that his conduct was independent of, and unauthorized by, the other members. (Separation Agreement § 2.) Count I should be dismissed as to Anthony and Catone.

***As to ACD Logistics***

Count I additionally fails against the Company. Every act comprising the Complaint's theft narrative, including the shortfall acknowledgment (December 12, 2025), the Personal Guarantee (January 7, 2026), and the dishonored check (February 26, 2026), occurred after December 6, 2025, the date the Company terminated Dhillon's membership, management authority, and agency. (Separation Agreement § 1.)

Civil theft's felonious-intent element must belong to the entity itself, and an agent's fraudulent intent is not imputed to the principal where the agent acted outside the scope of his authority and adversely to the principal. *Lanchile Airlines v. Conn. Gen. Life Ins. Co.*, 759 F. Supp. 811, 814 (S.D. Fla. 1991); *Tew v. Chase Manhattan Bank, N.A.*, 728 F. Supp. 1551, 1560 (S.D. Fla. 1990). ACD Logistics was not a knowing participant in any theft; it was itself a target of

Dhillon's unauthorized conduct. The Company expressly declined to release Dhillon from that conduct, and he agreed to indemnify the Company against precisely this type of third-party action. (Separation Agreement §§ 5, 7.) Nothing pled suggests the Company entered the November 2025 transaction with felonious intent to deprive AZG of its money. Count I should be dismissed as to ACD Logistics.

Moving Defendants also note a defect in Plaintiff's pre-suit demand. Plaintiff's February 11, 2026 letter demanded $60,000 within seven days. Florida Statute § 772.11 requires a written demand for $200 or the treble-damage amount and affords the recipient thirty days after receipt to comply. On an alleged $55,000 theft, the statutory treble figure is $165,000. The Complaint alleges generally that all conditions precedent were satisfied, but the demand letter on its face does not satisfy the statutory requirements, providing an independent basis to challenge Count I as to all Moving Defendants.

Accordingly, Count I should be dismissed as to all Moving Defendants.

**C. Count III Fails as to Anthony and Catone**

A breach of oral contract claim requires, as a threshold matter, a valid contract comprised of an offer, acceptance, and mutual assent between the parties to be bound. *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). The Complaint's own allegations confirm that Anthony and Catone had no role in reaching the alleged agreement. Plaintiff alleges it "reached out to the Company," not to Anthony or Catone individually. (Compl. ¶ 12.) Paragraph 14 alleges only that "Plaintiff and Defendants ultimately agreed" to the transaction, without identifying which individual communicated, negotiated, or accepted terms. Nowhere in the Complaint does Plaintiff allege that Anthony or Catone personally negotiated with Plaintiff or accepted any obligation on

the Company's behalf. No contract can be enforced against a party who played no role in forming it.

Independently, an oral agreement for $91,650 in goods is presumptively unenforceable under Florida's Uniform Commercial Code statute of frauds absent a qualifying exception. Fla. Stat. § 672.201(1). The Section 672.201(3)(c) exception for goods for which payment has been made and accepted does not reach Anthony or Catone. Fla. Stat. § 672.201(3)(c). The Complaint does not allege that either Anthony or Catone personally accepted, received, or exercised any control over Plaintiff's payment. Absent that exception, Fla. Stat. § 672.201(1) bars enforcement of the alleged agreement against Anthony and Catone as a matter of law. Count III should accordingly be dismissed as to the Individual Defendants.

**D. Count IV Fails to State a Claim for Unjust Enrichment as to Anthony and Catone**

Unjust enrichment requires that the plaintiff conferred a direct benefit on the defendant, that the defendant voluntarily accepted and retained the benefit, and that the circumstances make it inequitable for the defendant to retain the benefit without paying its value. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). The benefit must be direct, not merely a benefit that flows through an entity in which the individual defendant holds an interest. *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017); *BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332 (S.D. Fla. 2021).

The Complaint does not allege that Anthony or Catone personally received any portion of Plaintiff's payment. Plaintiff alleges only that the wire went to "the bank account Defendants instructed Plaintiff to pay." (Compl. ¶ 43.) That allegation identifies no specific recipient, no specific account, and no facts connecting the account to Anthony or Catone individually. Plaintiff's further assertion that "Defendants unjustly enriched themselves . . . by retaining $55,000 . . . and distributing such amongst themselves" is another conclusory group-pleaded assertion that does not

identify what, if anything, either Anthony or Catone individually received. (Compl. ¶ 44.) Count IV should be dismissed as to the Individual Defendants.

**V. MOVING DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES PURSUANT TO THE SEPARATION AGREEMENT INDEMNIFICATION AND FLORIDA STATUTE § 772.11**

Moving Defendants respectfully request that the Court award them their reasonable attorneys' fees and costs incurred in defending this action, and further reserve their right to seek those amounts directly from Dhillon pursuant to the broad indemnification obligation he assumed in the Separation Agreement.

As set forth above, Dhillon expressly agreed in the Separation Agreement to indemnify, defend, reimburse, and hold harmless the Company and each of its members, managers, officers, employees, affiliates, representatives, agents, successors, and assigns from and against any and all claims, demands, causes of action, suits, proceedings, liabilities, losses, damages, costs, and expenses of every kind and nature, including without limitation all attorneys' fees, expert fees, and all other costs of defense or enforcement, which arise out of, relate to, or result from, directly or indirectly: (i) any act or omission of Dhillon during his involvement with the Company; (ii) any financial transaction, expenditure, disbursement, or obligation initiated, executed, approved, concealed, or authorized by Dhillon; (iii) any misappropriation, misuse, diversion, or commingling of Company funds or assets by Dhillon; (iv) any breach of fiduciary duty, breach of contract, breach of the Operating Agreement, statutory violation, wrongful act, fraud, concealment, or misrepresentation committed by Dhillon; and (v) any investigation, subpoena, demand, claim, arbitration, mediation, litigation, regulatory proceeding, or enforcement action arising out of or relating to Dhillon's conduct. (Separation Agreement § 5.)

This action fits squarely within every category of that indemnification obligation. This lawsuit exists because of Dhillon's conduct and Dhillon's conduct alone. He communicated with Plaintiff without authority. He accepted funds without authorization. He made representations, executed a personal guarantee, and issued a worthless check, all after he had been removed from the Company. He admits in writing that his actions constituted breaches of fiduciary duty, breaches of the Operating Agreement, and actions outside the scope of his authority. (Separation Agreement § 2.) The Separation Agreement further provides that the Company expressly did not release him from liability for any of that misconduct, and that nothing in the Agreement limits or impairs the Company's rights to pursue civil, criminal, regulatory, or administrative action arising from his conduct. (Separation Agreement § 7.)

The indemnification obligation is expressly described in the Separation Agreement as "absolute, unconditional, irrevocable, and continuing in nature," surviving "the execution, delivery, performance, termination, and expiration of this Agreement indefinitely," and remaining "in full force and effect notwithstanding Dhillon's removal as a Member or any release or waiver granted elsewhere in this Agreement." (Separation Agreement § 5.) No limitation of liability, exclusion of damages, or other limiting doctrine applies to his obligations under that Section. (*Id.*)

Every dollar Moving Defendants have expended in defending this action, retaining counsel, reviewing the Complaint, investigating the facts, preparing declarations, and briefing these motions is a direct consequence of Dhillon's misconduct. Moving Defendants did not choose to be parties to this litigation. They were sued because Dhillon acted without authority, concealed his conduct from his co-members, and then defaulted in the very proceeding he caused. The indemnification provision was specifically designed to address this circumstance, and Dhillon's

default does not extinguish his contractual obligation to cover the costs his actions imposed on others.

Additionally, and independently, Florida Statute § 772.11 provides that a defendant who prevails on a civil theft claim is entitled to an award of reasonable attorneys' fees upon a finding that the civil theft claim was without substantial factual or legal support. *Island Travel & Tours Ltd. Co. v. MYR Independent, Inc., 307 So. 3d 829 (Fla. 3d DCA 2020)* (confirming that § 772.11 permits defense fees upon such a finding). As demonstrated above, the civil theft count against Moving Defendants rests entirely on conclusory group-pleaded allegations, attributes no individualized wrongdoing to any ACDL Defendant, and is contradicted by the documentary record. In the event the Court dismisses Count I, Moving Defendants respectfully request leave to file a motion for fees under § 772.11 upon entry of an order in their favor on that count.

Accordingly, Moving Defendants respectfully request that the Court: (a) recognize that the costs and fees incurred by ACD Logistics, Anthony, and Catone in defending this action are subject to Dhillon's indemnification obligation under Section 5 of the Separation Agreement; (b) upon entry of judgment or dismissal in their favor, award Moving Defendants their reasonable attorneys' fees and costs against Plaintiff to the extent authorized by Florida Statute § 772.11; and (c) reserve and preserve Moving Defendants' contractual right to seek full indemnification, including all attorneys' fees and costs incurred in this litigation, directly from Dhillon pursuant to the Separation Agreement.

## VI. CONCLUSION

For the foregoing reasons, Moving Defendants respectfully request that the Court:

(1) Dismiss without prejudice all claims against Anthony and Catone for lack of personal jurisdiction under Rule 12(b)(2);

(2) Dismiss without prejudice all claims against ACD Logistics for lack of personal jurisdiction under Rule 12(b)(2);

(3) In the alternative, dismiss Count I and Count IV as to Anthony and Catone under Rule 12(b)(6) for failure to state a claim;

(4) Dismiss Count III as to Anthony and Catone for failure to allege that either formed any contract with Plaintiff and, independently, under Florida's Uniform Commercial Code statute of frauds;

(5) Dismiss Count I as to ACD Logistics under Rule 12(b)(6) for failure to plead felonious intent and for failure to satisfy the pre-suit demand requirement of Florida Statute § 772.11;

(6) Award Moving Defendants their reasonable attorneys' fees and costs to the extent authorized by Florida Statute § 772.11 upon entry of an order in their favor on Count I; and

(7) Reserve and preserve Moving Defendants' right to seek full indemnification of all attorneys' fees and costs incurred in this litigation directly from Arjun Dhillon pursuant to Section 5 of the Separation Agreement, and grant such other and further relief as the Court deems just and proper.

Dated: August 24, 2026

Respectfully submitted,

**James M. Slater**
James M. Slater, Esq. (FBN 111779)
SLATER LEGAL PLLC
9000 Dadeland Blvd. #1500
Miami, FL 33156
Tel.: (305) 523-9023
james@slater.legal

Kalpana Nagampalli, Esq. *(Pro hac vice pending)*
ESCA LEGAL LLC
55 Broadway, 3rd Floor
New York, NY 10006
P: 347-519-4323
kalpana@esca.legal

*Attorneys for Defendant ACD Logistics, LLC.*
*Benjamin Anthony and Daniel Cantone.*