# EXHIBIT A

# SEPARATION AGREEMENT AND RELEASE

This Separation Agreement and Release ("Agreement") is entered into as of the 6th day of December, 2025 ("Effective Date"), by and between ACD Logistics, LLC, a Wyoming limited liability company (the "Company"), and Arjun Dhillon ("Dhillon"). The Company and Dhillon are referred to collectively as the "Parties," and individually as a "Party."

## RECITALS

WHEREAS, Dhillon has served as a Member and, at various times, as a Manager, Officer, or agent of the Company pursuant to the Operating Agreement of ACD Logistics, LLC, dated November 1, 2021 (the "Operating Agreement");

WHEREAS, the Company has determined, following review of information and evidence, that Dhillon engaged in conduct constituting cause for his removal as a Member pursuant to Section III(D) of the Operating Agreement and for his removal from all managerial and officer positions pursuant to Sections VI(D) and VII(A);

WHEREAS, Dhillon acknowledges and admits that during his tenure he (i) commingled Company funds with his own personal funds; (ii) used Company funds for personal expenses without disclosure, authorization, or approval; (iii) the reimbursement of Company funds for personal expenses and personal benefit without disclosure or authorization; (iv) the decision to incur debt obligations without full approval by the Company; and (v) otherwise acted outside the scope of his authority in breach of his fiduciary, contractual, and statutory duties;

WHEREAS, the Company desires to remove Dhillon as a Member and to acquire Dhillon's entire Membership Interest in the Company through the exercise of its rights under the Operating Agreement, and Dhillon desires to effectuate such removal and transfer and to resolve all matters between the Parties;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, including the payment of One Hundred Dollars ($100.00) to Dhillon by the Company, the sufficiency and receipt of which are hereby acknowledged, the Parties agree as follows:

## COVENANTS

1. <u>Removal as Member, Manager, and Officer</u>

Effective as of the Effective Date, Dhillon is hereby involuntarily removed as a Member of the Company pursuant to Section III(D) of the Operating Agreement. Dhillon is concurrently removed from any and all positions as Manager, Officer, employee, agent, or representative of the Company pursuant to Sections VI(D) and VII(A) of the Operating Agreement. Dhillon

acknowledges that such removal was duly authorized, lawfully executed, and properly recorded in the Company's minutes.

2. Admission of Wrongdoing

Dhillon expressly admits, acknowledges, and agrees that during his involvement with the Company he engaged in conduct including, but not limited to, the commingling of Company funds with his personal funds; the reimbursement of Company funds for personal expenses and personal benefit without disclosure or authorization; the decision to incur debt obligations in his own name without full approval by the Company; and other actions constituting breaches of fiduciary duty, breaches of the Operating Agreement, and breaches of duties imposed by law. Dhillon agrees that such admissions are final, binding, and admissible in any judicial, arbitral, administrative, or regulatory proceeding involving the Parties.

3. Consideration, Sale and Transfer of Membership Interest, Tax

Dhillon hereby irrevocably assigns, transfers, conveys, and delivers to the Company all of his Membership Interest in the Company, including all economic, voting, and governance rights associated therewith. The Company hereby purchases such Membership Interest from Dhillon for the total sum of One Hundred Dollars ($100.00 USD) (the "Purchase Price"). Dhillon acknowledges that the Purchase Price constitutes fair and adequate consideration in light of his actions, the losses and liabilities incurred by the Company as a result of such actions, and the Company's rights under the Operating Agreement. Dhillon waives any and all rights to dispute, challenge, modify, rescind, or invalidate the Purchase Price, the valuation, or the transfer effected herein.

Upon execution of this Agreement and payment of the Purchase Price, Dhillon shall have no further rights, title, or interest of any kind in the Company.

*Tax Consequences*

Company makes no representations or warranties with respect to the tax consequences of the payments and any other consideration provided to Dhillon or made on Executive's behalf under the terms of this Agreement. Dhillon agrees and understands that Dhillon is responsible for payment, if any, of local, state, and/or federal taxes on the payments and any other consideration provided hereunder by Company and any penalties or assessments thereon. Dhillon further agrees to indemnify and hold Company harmless from any claims, demands, deficiencies, penalties, interest, assessments, executions, judgments, or recoveries by any government agency against Company for any amounts claimed due on account of (a) Dhillon's failure to pay or delayed payment of federal or state taxes, or (b) damages sustained by Company by reason of any such claims, including attorneys' fees and costs. The Parties agree and acknowledge that the payments made pursuant to section 1 of this Agreement are not related to sexual harassment or sexual abuse and not intended to fall within the scope of 26 U.S.C. Section 162(q).

4. Waiver of Rights and Future Claims to Ownership

Dhillon hereby irrevocably waives any and all rights to assert or claim any Membership Interest, equity interest, distribution, profit allocation, information right, voting right, or governance right in or with respect to the Company. Dhillon further waives any right to assert any derivative or direct claims on behalf of the Company and agrees that he shall not seek reinstatement or recognition as a Member under any provision of the Operating Agreement or Wyoming law.

5. Indemnification by Dhillon

Dhillon shall indemnify, defend, reimburse, and hold harmless the Company and each of its past, present, and future Members, managers, officers, employees, affiliates, representatives, agents, successors, and assigns (collectively, the "Indemnified Parties") from and against any and all claims, demands, causes of action, suits, proceedings, liabilities, losses, damages, fines, penalties, judgments, settlements, obligations, debts, charges, deficiencies, costs, and expenses of every kind and nature whatsoever, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, contingent or otherwise, including without limitation all attorneys' fees, expert fees, accounting fees, investigation costs, and all other costs of defense or enforcement (collectively, "Losses"), which arise out of, relate to, or result from, directly or indirectly: (i) any act or omission of Dhillon during his involvement with, or in any capacity on behalf of, the Company; (ii) any financial transaction, expenditure, disbursement, withdrawal, transfer, or obligation initiated, executed, approved, concealed, or authorized by Dhillon; (iii) any liability, obligation, debt, loan, credit facility, vendor account, payment obligation, reimbursement obligation, or financial commitment incurred by Dhillon, whether in his personal capacity or purportedly on behalf of the Company, including any attempt to assign such obligations to the Company without authorization; (iv) any misappropriation, misuse, diversion, or commingling of Company funds or assets by Dhillon; (v) any investigation, subpoena, demand, audit, inquiry, claim, arbitration, mediation, litigation, regulatory proceeding, or enforcement action arising out of or relating to Dhillon's conduct; (vi) any breach of fiduciary duty, breach of contract, breach of the Operating Agreement, statutory violation, wrongful act, fraud, concealment, or misrepresentation committed by Dhillon; and (vii) any breach of this Agreement.

Dhillon's indemnification obligations shall apply irrespective of whether the Losses arise from claims asserted directly against an Indemnified Party, derivatively, jointly, severally, or otherwise, and irrespective of any theory of liability or alleged fault of any Indemnified Party. Dhillon expressly waives any requirement that the Company mitigate its damages or exhaust remedies against third parties prior to seeking indemnification.

Dhillon's indemnification obligations are absolute, unconditional, irrevocable, and continuing in nature, shall survive the execution, delivery, performance, termination, and expiration of this Agreement indefinitely, and shall remain in full force and effect notwithstanding Dhillon's removal as a Member or any release or waiver granted elsewhere in this Agreement, except to the limited extent expressly stated in such release. No limitation of liability, exclusion of damages, or other limiting doctrine shall apply to Dhillon's obligations under this Section.

6. General Release by Dhillon

Dhillon, for himself and for his heirs, assigns, representatives, successors, and agents, hereby irrevocably releases, acquits, and forever discharges the Company and its Members, managers, officers, employees, agents, and affiliates from any and all claims, demands, causes of action, liabilities, loans, debts, obligations, damages, and costs of any nature, whether known or unknown, suspected or unsuspected, arising out of or relating in any way to Dhillon's membership, involvement, or association with the Company, including, without limitation, claims relating to governance, compensation, distributions, ownership, valuation, removal, or alleged wrongful acts by the Company or its Members. Dhillon acknowledges that this release is intended to be construed broadly and to bar all claims of any kind.

7. No Release by the Company

The Company expressly does not release Dhillon from any claim arising out of or relating to his misconduct, including financial wrongdoing, unauthorized loans, misappropriation of Company funds, breaches of fiduciary duty, loans, debts, or any matter for which Dhillon is obligated to indemnify the Company. Nothing in this Agreement limits or impairs the Company's rights to pursue potential civil, criminal, regulatory, or administrative action arising from Dhillon's misconduct.

Dhillon acknowledges that he is liable for full payment of any and all outstanding debts, transfers, purchases, agreements or obligations that he entered in his individual capacity that others may claim to still be owed by Company, including transactions that he personally guaranteed. In the event that a third-party threatens legal action to Company or brings legal action stemming from Dhillon's misconduct, the Company shall provide notice to Dhillon in writing within ten (10) business days.

8. Mutual Confidentiality and Non-Disparagement

The Parties agree to keep strictly confidential the existence of this Agreement, its terms, the negotiations leading to its execution, and all facts, information, and circumstances relating in any way to Dhillon's separation and removal from the Company (collectively, the "Confidential Information"). Neither Party shall, directly or indirectly, disclose, publish, disseminate, or communicate any Confidential Information to any third party, except as expressly permitted herein.

The Parties further agree that they shall not, in any manner or by any means, whether oral, written, electronic, or otherwise, disparage, defame, or make any statement that could reasonably be expected to harm the reputation of the other Party or, in the case of the Company, any of its Members, managers, officers, employees, representatives, affiliates, or agents.

Notwithstanding the foregoing, nothing in this Section shall prohibit either Party from making disclosures: (i) as required by applicable law, regulation, subpoena, or court order; (ii) to such Party's legal counsel, tax advisors, or accounting professionals, provided such recipients are bound by duties of confidentiality; (iii) in connection with filings, disclosures, or

communications reasonably necessary to comply with tax, regulatory, or governmental obligations; or (iv) to enforce the terms of this Agreement or defend against claims asserted by the other Party, provided that any such disclosure shall be limited to what is reasonably necessary for such purpose.

Dhillon further agrees that he shall not disclose, use, transfer, or communicate any internal financial information, business strategies, operational processes, documents, communications, proprietary data, or other non-public information of the Company, except to the extent expressly required by law or authorized in writing by the Company.

9. Cooperation

Dhillon shall fully cooperate with the Company with respect to all matters relating to his conduct, including but not limited to the return of property, production of documents, provision of information, participation in audits, and cooperation in litigation, arbitration, regulatory matters, or investigations. Dhillon shall promptly execute any further instruments requested by the Company to effectuate the intent of this Agreement.

The Parties shall work together in good faith to terminate or transfer the lease at 414 K ST. Suite 100, Sacramento, California 95814, in a timely manner.

10. Return of Company Property

Dhillon shall, within three (3) days of the Effective Date, return to the Company all Company property, assets, funds, documents, books, records, financial data, login credentials, electronic access rights, devices, files, communications, and any other materials belonging to or concerning the Company. Dhillon shall not retain copies, whether physical or electronic, of any Company information.

11. Representations and Warranties

Dhillon represents and warrants that he has disclosed all accounts, financial transactions, debts, liabilities, vendors, lenders, and financial obligations incurred during his tenure. Dhillon further represents that he has not transferred, concealed, destroyed, or attempted to dispose of any Company property or records and that he has full authority to enter into and perform this Agreement.

12. Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the State of Wyoming, without regard to its conflict-of-law principles. If any provision of this Agreement is determined to be invalid or unenforceable, such provision shall be deemed modified to the minimum extent necessary to make it enforceable, and the remainder of this Agreement shall remain in full force and effect. Any court of competent jurisdiction shall have the authority to reform any such provision to the extent required to make it enforceable under applicable law.

The Parties agree that the exclusive venues for any action or proceeding arising out of or relating to this Agreement shall be the state or federal courts located in the State of Wyoming or the State of New York, and no other courts shall have venue. The Parties hereby irrevocably consent to the personal jurisdiction of such courts and waive any objection based on venue, forum, or convenience.

13. Entire Agreement

This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior negotiations, communications, or agreements. No modification shall be valid unless in writing and signed by both Parties.

14. No Oral Modification.

This Agreement may only be amended in a writing signed by Dhillon and Company.

15. Effective Date.

Dhillon understands that this Agreement shall be null and void if not executed by Dhillon within seven days. This Agreement will become effective on the date it has been signed by both Parties (the "Effective Date").

16. Counterparts.

This Agreement may be executed in counterparts and each counterpart shall be deemed an original and all of which counterparts taken together shall have the same force and effect as an original and shall constitute an effective, binding agreement on the part of each of the undersigned. The counterparts of this Agreement may be executed and delivered by facsimile, photo, email PDF, or other electronic transmission or signature.

17. Execution

This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one binding instrument. Electronic signatures shall be deemed valid and enforceable.

18. Authority.

Company represents and warrants that the undersigned has the authority to act on behalf of Company and to bind Company and all who may claim through it to the terms and conditions of this Agreement. Dhillon represents and warrants that Dhillon has the capacity to act on Executive's own behalf and on behalf of all who might claim through Dhillon to bind them to the terms and conditions of this Agreement. Each Party warrants and represents that there are no

liens or claims of lien or assignments in law or equity or otherwise of or against any of the claims or causes of action released herein.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS]

19. Voluntary Execution of Agreement. Dhillon understands and agrees that Dhillon executed this Agreement voluntarily and without any duress or undue influence on the part or behalf of Company or any third party, with the full intent of releasing all of Executive's claims against Company. Dhillon acknowledges that:

(a) Dhillon has read this Agreement;

(b) Dhillon has been represented in the preparation, negotiation, and execution of this Agreement by legal counsel of his own choice;

(c) Dhillon understands the terms and consequences of this Agreement and of the releases it contains;

(d) Dhillon is fully aware of the legal and binding effect of this Agreement; and

(e) Dhillon has not relied upon any representations or statements made by Company that are not specifically set forth in this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement on the respective dates set forth below.

Arjun Dhillon, an individual

Dated: December 8, 2025

Signed by:
_______________ 3DAB747B34B54E5...
Arjun Dhillon

**ACD LOGISTICS, LLC**

Dated: December 8, 2025

By: Signed by: _______________ EFE0B99BAE364D9...
Daniel R. Catone

Dated: December 8, 2025

By: Signed by: _______________ 397FA524631943A...
Benjamin Anthony