**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:26-cv-61499-WPD

AZG ENTERPRISES, INC.,

Plaintiff,

v.

ACD LOGISTICS, LLC a/k/a ACDL LLC
and ARJUN DHILLON,

Defendants.
_______________________________________/

**DEFENDANT ACD LOGISTICS, LLC'S MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant ACD Logistics, LLC ("ACD Logistics" or the "Company"), by and through undersigned counsel, respectfully submits this memorandum of law in support of its motion to dismiss the First Amended Complaint of Plaintiff AZG Enterprises, Inc. ("Plaintiff" or "AZG") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), and states as follows.

## I. PRELIMINARY STATEMENT

The claims against ACD Logistics must be dismissed in their entirety because Plaintiff seeks to hold a Wyoming company liable for the unauthorized, concealed conduct of a single minority member, Arjun Dhillon ("Dhillon"), whose sole admitted misconduct gave rise to every allegation in this case, while failing to provide the purported Personal Guarantee referenced in the complaint, which may very well bear on Plaintiff's claims against ACD Logistics.

Every specific factual allegation of wrongdoing in the First Amended Complaint traces back to Dhillon alone: he approached Plaintiff, he represented that merchandise was available, he acknowledged the shortfall in writing, he executed a Personal Guarantee, he made repeated promises of repayment, and he wrote a $45,000 worthless check. ACD Logistics' only alleged connection to any of this is that Plaintiff's wire transfer happened to land, briefly, in the Company's bank account, at Dhillon's sole direction. That is not a basis for liability.

Plaintiff's own litigation conduct confirms this conclusion. By filing the First Amended Complaint, Plaintiff voluntarily dismissed all claims against Benjamin Anthony and Daniel Catone as individual defendants. That dismissal is a concession that the individual members of ACD Logistics bear no personal liability for the conduct alleged in this case. Anthony and Catone together hold 100% of the membership interest in ACD Logistics following Dhillon's removal. If the two members who collectively own and control the Company cannot be held individually liable for the transaction at issue, the Company itself cannot be held liable through them. Plaintiff's theory of corporate liability depends entirely on imputing Dhillon's conduct to ACD Logistics

through his former membership interest. But the same factual analysis that led Plaintiff to drop Anthony and Catone, the absence of any individualized wrongdoing, any direct participation, any authorized representation, and any personal receipt of funds, applies with equal force to ACD Logistics. A company is not liable for the unauthorized acts of a minority member that its controlling majority members did not know about, did not authorize, and did not benefit from. Plaintiff cannot logically abandon its claims against the people who own and control the Company while simultaneously maintaining that the Company itself is liable. The entity can only act through its members; if the members are conceded to have no liability, the entity has none either.

Dhillon never had actual or apparent authority to speak for ACD Logistics — not before his removal, and not after. Acting alone, outside the scope of whatever authority his minority membership carried, and adversely to the very Company from which he was concealing his conduct, Dhillon approached Plaintiff, represented that merchandise was available, and directed Plaintiff's payment into the Company's account. After December 6, 2025, when the members voted to remove him for cause, the picture is starker still: he held no membership, management, officer, employee, agency, or representative role with ACD Logistics whatsoever. (Declaration of Benjamin Anthony, "Anthony Decl." ¶ 7; Declaration of Benjamin Caton, "Catone Decl." ¶ 7.)[1]

As a threshold matter, this Court lacks personal jurisdiction over ACD Logistics. ACD Logistics is a Wyoming LLC with its principal place of business in Powell, Wyoming. It has never been incorporated or registered in Florida, maintains no office, employees, bank accounts, or registered agent here, and owns no property here. (Anthony Decl. ¶¶ 4-5; Catone Decl. ¶¶ 4-5.) It did not solicit Plaintiff in Florida, did not direct communications into Florida, and did not perform

[1] Dhillon entered into a Separation Agreement, which requires him to indemnify ACD Logistics for the claims herein. To the extent this motion is denied, ACD Logistics reserves its contractual right to seek full indemnification, including all attorneys' fees and costs incurred in this litigation, directly from Dhillon pursuant to the Separation Agreement.

any obligation in Florida; the only shipment associated with this transaction went to Winchester, Virginia. (Anthony Decl. ¶¶ 16, 19-20; Catone Decl. ¶¶ 14, 17.) The only Florida connection anywhere in this case is Plaintiff's own unilateral decision to wire funds from this District, a fact about Plaintiff's own conduct that cannot, consistent with due process, be used to establish jurisdiction over an out-of-state company.

Even if the Court reaches the merits, the First Amended Complaint independently fails as to ACD Logistics. Count I's civil theft claim cannot survive because the Complaint does not sufficiently allege the Company never knowingly obtained or used Plaintiff's property with felonious intent; it did not, every fact alleged in support of that intent belongs to Dhillon. The remainder of the complaint fails because Plaintiff does not attach the Personal Guarantee that Dhillon made to purportedly acknowledge that *he personally* was refunding Plaintiff "as a result" of his separation from ACD Logistics. The guarantee is material to Plaintiff's claims not only against Dhillon but also ACD Logistics, as Dhillon personally acknowledged the debt and obligation to repay it, and it may bear on whether Plaintiff agreed to forgo claims or release ACD Logistics, or further facts relevant to Plaintiff's claims that *ACD Logistics* had anything to do with Dhillon's wrongdoing (it did not).

For all of these reasons, ACD Logistics respectfully requests dismissal of the First Amended Complaint in its entirety, together with an award of its attorneys' fees and costs.

## II. STATEMENT OF FACTS

For purposes of this motion, ACD Logistics accepts the First Amended Complaint's well-pleaded factual allegations as true as to Dhillon, but not its legal conclusions or its undifferentiated references to "Defendants" collectively, and specifically contests all allegations asserted against it. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Plaintiff has not pleaded sufficient facts to form in personal jurisdiction, as set forth below, thus requiring dismissal, even

so ACD Logistics provides facts "by affidavits" to challenge any jurisdictional claims. *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1388 (S.D. Fla. 2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015).

**ACD Logistics and Its Membership**

ACD Logistics is a Wyoming limited liability company with its principal place of business at 254 E. 2nd Street, Powell, Wyoming 82435. (Anthony Decl. ¶ 4; Catone Decl. ¶ 4.); *see also* Compl. ¶ 2. It has never been incorporated or registered in Florida and maintains no office, warehouse, employees, bank account, telephone listing, or registered agent here, and owns no real or personal property here. (Anthony Decl. ¶ 5; Catone Decl. ¶ 5.)

Relevant to ownership for purposes of personal jurisdiction, in November 2025, Dhillon held a 34% membership interest in ACD Logistics; the remaining 66% was held by Anthony and Catone. (Anthony Decl. ¶ 6; Catone Decl. ¶ 6.) Anthony is a citizen of the State of Indiana (Anthony Decl. ¶ 1), and Catone is a citizen of the State of Wyoming (Catone Decl. ¶ 1). ACD Logistics' governance and business decisions were never entrusted solely to Dhillon; Anthony and Catone participated in the Company's management and governance throughout. (Anthony Decl. ¶ 8; Catone Decl. ¶ 8.) Even before Dhillon's removal, *see* Compl. ¶ 19 (referencing Dhillon's separation from ACD Logistics in the Personal Guarantee), Anthony and Catone had begun reviewing concerns about his handling of Company funds and obligations. (Anthony Decl. ¶ 9; Catone Decl. ¶ 9.)

**The Transaction**

In November 2025, Plaintiff sought to purchase certain trading cards. (Compl. ¶ 12.) Plaintiff alleges that Dhillon "approached Plaintiff (on behalf of ACD Logistics)" and represented that the Company had trading cards available for sale. (*Id.* ¶ 13.) Neither Anthony, Catone, nor

ACD Logistics had any knowledge of or participation in the communications or negotiations between Dhillon and Plaintiff. (Anthony Decl. ¶¶ 10, 14; Catone Decl. ¶¶ 10, 14.) Upon information and belief, Plaintiff communicated exclusively with Dhillon, who hid those communications from Anthony and Catone. (Anthony Decl. ¶¶ 11-12; Catone Decl. ¶¶ 11-12.) Neither Anthony nor Catone authorized Dhillon to represent that ACD Logistics possessed, controlled, or could sell any particular merchandise to Plaintiff, and neither is aware of any Company approval of the transaction's material terms. (Anthony Decl. ¶ 15; Catone Decl. ¶ 13.) ACD Logistics did not solicit Plaintiff, direct communications into Florida, or agree on its own behalf to perform any agreement in Florida. (Anthony Decl. ¶ 16; Catone Decl. ¶ 14.)

On November 28, 2025, Plaintiff wired $91,650 to ACD Logistics' bank account, at Dhillon's direction. (Compl. ¶ 15.) To the extent any shipment occurred in connection with the transaction, it went to Winchester, Virginia, not Florida. (Anthony Decl. ¶ 20.) ACD Logistics maintains no business records of a contract with Plaintiff or of Dhillon's alleged communications with Plaintiff regarding the transaction's terms. (Anthony Decl. ¶ 19; Catone Decl. ¶ 17.)

**Dhillon's Post-Removal Conduct**

At the time of his removal, neither Anthony nor Catone was aware that Dhillon had acknowledged any obligation to Plaintiff. (Anthony Decl. ¶ 25; Catone Decl. ¶ 23.) Six days later, on December 12, 2025, Dhillon individually acknowledged in writing that $55,000 remained outstanding to Plaintiff. (Compl. ¶ 17.) On January 7, 2026, the First Amended Complaint alleges that Dhillon executed a Personal Guarantee that, by its own terms, was given "solely in connection with . . . an orderly business separation, restructuring, or transition involving the Obligor and ACD Logistics LLC" — language confirming that the separation had already occurred and that the undertaking was Dhillon's personal obligation. (Compl. ¶¶ 18-19.) Plaintiff fails to attach a copy

of the Personal Guarantee apparently referring to ACD Logistics with the complaint. On February 26, 2026, Dhillon wrote a $45,000 personal check that was returned for insufficient funds. (Compl. ¶¶ 47-48.) ACD Logistics did not authorize any of this conduct. (Anthony Decl. ¶¶ 26-30; Catone Decl. ¶¶ 24-28.)

## III. THIS COURT LACKS PERSONAL JURISDICTION OVER ACD LOGISTICS

### A. Legal Standard

The Court conducts a two-step inquiry, asking (1) whether Florida's long-arm statute provides a basis for jurisdiction, and (2) whether the exercise of jurisdiction comports with due process. *Prosegur Sec. USA v. Glob. Elite Grp., Inc.*, 2024 U.S. Dist. LEXIS 17400, at *4 (S.D. Fla. 2024). Plaintiff bears the burden of establishing a prima facie case of personal jurisdiction. *Shaver L. Grp. LLC v. Concorde Inv., LLC*, 796 F. Supp. 3d 1349, 1353 (S.D. Fla. 2025). The prima facie case requires sufficient evidence to withstand a motion for directed verdict, and conclusory allegations do not suffice. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). Florida courts strictly construe the long-arm statute in favor of the nonresident defendant. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 856 (11th Cir. 1990).

### B. Florida's Long-Arm Statute Is Not Satisfied as to ACD Logistics

Personal jurisdiction over ACD Logistics cannot be established under Florida's long-arm statute, Fla. Stat. § 48.193(1)(a), because the Company has no relevant contacts with this forum. Florida's long-arm statute requires two showings for specific jurisdiction: (i) that the defendant committed one of the enumerated acts in Florida, and (ii) that the plaintiff's cause of action "arises from" that Florida activity. *Banco de los Trabajadores v. Moreno*, 237 So. 3d 1127, 1135 (Fla. 3d DCA 2018). *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1113 (1990).

**1. No Tortious Act by ACD Logistics in Florida.**

Paragraph 6 of the First Amended Complaint alleges that "Defendants" committed a tortious act in this State. That conclusory, group-pleaded allegation is not sufficient to establish jurisdiction over ACD Logistics specifically. A complaint's bare invocation of a long-arm provision is a legal conclusion that courts disregard. *Thorpe v. Mem'l Sloan-Kettering Cancer Ctr.*, 412 So. 3d 861, 872 (Fla. 2025); *see also Regent Grand Mgmt. Ltd. v. Tr. Hosp. LLC*, 2019 WL 1112553, at *9 (S.D. Fla. Jan. 9, 2019). Every well-pled nonconclusory fact describing the alleged misrepresentations and false statements to Plaintiff belongs to Dhillon individually — not to ACD Logistics. As explained more fully in Section IV below, Dhillon's unauthorized, concealed conduct cannot be imputed to the Company for purposes of establishing its own contacts with Florida. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) (jurisdiction over each defendant must be assessed individually based on that defendant's own contacts, not the contacts of a co-defendant or agent).

**2. No Contract Breach Performed in Florida.**

Section 48.193(1)(a)(7) reaches a nonresident defendant who breaches a contract "by failing to perform acts required by the contract to be performed in this state." The First Amended Complaint identifies no act that ACD Logistics itself was required to perform in Florida. Whatever performance occurred in connection with the alleged transaction, e.g., the shipment of merchandise, occurred in Virginia, not Florida. (Anthony Decl. ¶ 20.) *See Astro Aluminum Treating Co. v. Inter Contal, Inc.*, 296 So. 3d 462 (Fla. 4th DCA 2020) (no jurisdiction under Fla. Stat. § 48.193(1)(a)(7) where contract did not require Florida performance).

**3. Plaintiff's Unilateral Wire Is the Only Florida Connection.**

A plaintiff's unilateral decision to send money from its home state to a nonresident defendant does not make Florida the locus of the defendant's conduct. *Thorpe*, 412 So. 3d at 872. Contact initiated by a Florida plaintiff does not satisfy minimum contacts when it is random, attenuated, or fortuitous, and that it was purely a matter of chance that the relevant contact originated from Florida rather than another state. *L.O.T.I. Group Prods. v. Lund*, 907 F. Supp. 1528, 1534 (1995).

Moreover, passive membership in a Wyoming LLC is not purposeful availment of the privilege of conducting activities in Florida, and membership in an LLC does not by itself make a member the company's agent. *Doe v. Thompson*, 620 So. 2d 1004, 1005 (Fla. 1993); Wyo. Stat. § 17-29-301. The same follows for Dhillon's concealed, unauthorized dealings with Plaintiff: absent any manifestation of actual or apparent authority from ACD Logistics, those dealings likewise cannot constitute the Company's own purposeful contact with this forum. Third-party contacts may be imputed to a defendant under an agency or alter-ego theory, and agency-based imputation requires a showing that the defendant exercised control over the third party's activities. *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1379 (2015). Likewise, where a plaintiff seeks to attribute one entity's forum activity to another, the Eleventh Circuit has required agency or alter-ego facts rather than mere status-based association. *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Plaintiff pleads no alter ego, no sham separateness, no agency control, and no facts showing that Dhillon's alleged dealings were anything other than his own alleged conduct. In fact, Dhillon did not have authority from ACD Logistics to act on its behalf.

**4. No Jurisdictional Basis for Count IV.**

Paragraph 6 of the First Amended Complaint does not allege a jurisdictional basis tied to

the unjust enrichment claim (Count IV). An unjust enrichment theory alone does not supply the connexity the statute requires. *Banco de los Trabajadores*, 237 So. 3d at 1135.

#### 5. No Prior Course of Dealing Establishes ACD Logistics' Contacts with Florida.

The First Amended Complaint newly alleges that "Plaintiff has previous business dealings with Defendants, having purchased trading and/or other cards for re-sale from Defendants on multiple occasions previously," and that "on each such occasion," Plaintiff made "Defendants" aware of its Florida location. (Compl. ¶¶ 10-11.) This allegation appears calculated to supply the repeated, purposeful forum contact that the original Complaint lacked. But ACD Logistics' own business records reflect no such history: ACD Logistics' business records do not reflect any previous business dealings, transactions, or sales with Plaintiff outside of the single transaction at issue here, and neither Anthony nor Catone has any personal or direct knowledge of any prior transaction or business dealing with Plaintiff. (Anthony Decl. ¶¶ 31-32; Catone Decl. ¶¶ 29-30.) Because the alleged prior course of dealing does not exist, the Florida awareness Plaintiff claims to have communicated "on each such occasion" likewise never reached ACD Logistics. Whatever awareness Plaintiff imparted went to Dhillon personally, in communications ACD Logistics' controlling members neither received nor knew about. (Anthony Decl. ¶¶ 10-12; Catone Decl. ¶¶ 10-12.) A plaintiff cannot manufacture a defendant's forum contacts by alleging a course of dealing that the defendant's own uncontroverted records show never happened.

### C. Exercise of Jurisdiction Would Violate Due Process

Due process requires a relationship arising from contacts that the defendant itself creates with the forum. *Walden v. Fiore*, 571 U.S. 277, 284-86 (2014). Plaintiff's own contacts with Florida cannot manufacture jurisdiction over a Wyoming company with no independent connection to this forum. Paragraph 5 of the First Amended Complaint recites in conclusory terms

that "Defendants have maintained sufficient minimum contacts with this State." (Compl. ¶ 5.) That is a legal conclusion entitled to no presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The only factual allegation that could conceivably bear on ACD Logistics' contacts with Florida is that Plaintiff wired funds from this District, a fact about Plaintiff's own conduct that Walden squarely forecloses as a basis for jurisdiction. *Walden*, 571 U.S. at 284-86.

## IV. THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM

### A. Legal Standard

To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. Where a complaint lumps multiple defendants together in group allegations without differentiating which defendant is alleged to have done what, it fails to give each defendant fair notice and does not satisfy federal pleading requirements. See *NorthStar Moving Holding Co. v. NorthStar Movers*, No. 19-62176-CIV, 2020 U.S. Dist. LEXIS 2998, at *5 (S.D. Fla. Jan. 7, 2020).

### B. Count I Fails to State a Claim for Civil Theft as to ACD Logistics

To state a claim for civil theft, a plaintiff must plausibly allege that the defendant (1) knowingly obtained, used, or endeavored to obtain or use the plaintiff's property (2) with felonious intent, either temporarily or permanently, to deprive the plaintiff of its right to the property or to appropriate it to the use of a person not entitled to it. Fla. Stat. §§ 812.014, 772.11; *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008). Civil theft ultimately requires proof by clear and convincing evidence, and a complaint that cannot plausibly allege felonious intent under the ordinary Rule 8 standard falls drastically short.

The First Amended Complaint fails on both elements. On the first element, it does not allege that ACD Logistics knowingly obtained, used, or endeavored to obtain or use any of

Plaintiff's property; the entire theft narrative, including the shortfall acknowledgment, the Personal Guarantee, the repeated assurances, and the worthless check, describe only Dhillon's conduct. (Compl. ¶¶ 17-23.) ACD Logistics is never named in connection with any of it. On the second element, paragraph 21's allegation that "Defendants falsely represented" and paragraph 22's allegation that "Defendants lied to Plaintiff" are precisely the sort of conclusory, group-pleaded assertions that *Twombly* and *Iqbal* reject; neither allegation identifies any act, statement, or intent particular to ACD Logistics as an entity distinct from Dhillon.

Defendant also notes a defect in Plaintiff's pre-suit demand. Plaintiff's February 11, 2026 letter demanded $60,000 within seven days. Florida Statute § 772.11 requires a written demand for $200 or the treble-damage amount and affords the recipient thirty days after receipt to comply. On an alleged $55,000 theft, the statutory treble figure is $165,000. Plaintiff served a second demand letter on September 8, 2026, requiring trebled payment within 30 days. While ACD Logistics is aware that courts in this District routinely do not entertain motions to dismiss on the failure to timely provide presuit notice, ACD Logistics nevertheless raises this argument. *Cf. Catano v. Capuano,* 2020 WL 639406, at *9 (S.D. Fla. Feb. 11, 2020).

Accordingly, Count I should be dismissed as to ACD Logistics.

### C. Plaintiff's Failure to Attach the Personal Guarantee Requires Dismissal of Counts III and IV

While some caselaw supports that Plaintiffs are not always required to attach a contract to the complaint, *see Daily Candy, Inc. v. Gordet & Schmidt, Inc.*, No. 07-20625, 2007 WL 9702195 (S.D. Fla. June 27, 2007) ("Although Rule 10(c) '*permits* a plaintiff to attach a contract to the complaint, nothing in the federal rules *requires* a plaintiff to do so, or to plead the details of a written contract.'") (emphasis in original), other courts in this district have concluded that plaintiffs provide a contract or a degree of specificity as to the terms, *see NPA Assocs., LLC v.*

*Lakeside Portfolio Mgmt., LLC*, 2014 WL 71482, at *4 (S.D. Fla. Feb. 22, 2014) ("A plaintiff must either attach a copy of the valid contract to the complaint or identify a valid contract with a degree of specificity") (internal citations and quotations omitted).

While Counts III and IV are predicated on a purported oral contract, the fact that Dhillon later acknowledged his *own* responsibility for repayment to Plaintiff suggests that Plaintiff was aware that the purported oral agreement was with Dhillon alone. By referencing the Personal Guarantee in the complaint, it is incorporated therein, and the excerpts cited by Plaintiff—that Dhillon agreed to pay Plaintiff as a result of his separation with ACD Logistics—bears on Plaintiff's later allegations that ACD Logistics entered into a purported agreement. The Court should require Plaintiff to provide the agreement with its complaint.

**D. Count IV Separately Fails to State a Claim**

Unjust enrichment requires that the plaintiff conferred a direct benefit on the defendant, that the defendant voluntarily accepted and retained the benefit, and that the circumstances make it inequitable for the defendant to retain the benefit without paying its value. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). The benefit must be one the defendant itself retained, not merely one that passed through the defendant on its way to someone else. *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017); *BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332 (S.D. Fla. 2021).

Plaintiff's own allegation is that "Defendants unjustly enriched themselves . . . by retaining $55,000.00 . . . and distributing such amongst themselves." (Compl. ¶ 44.) That allegation, on its face, describes individuals distributing money among themselves — not a company retaining a benefit for its own use. It identifies no fact suggesting that ACD Logistics, as opposed to Dhillon personally, currently holds, controls, or has benefited from any portion of the $55,000.

Count IV should accordingly be dismissed as to ACD Logistics.

## VII. CONCLUSION

For the foregoing reasons, Defendant ACD Logistics, LLC respectfully requests that the Court:

(1) Dismiss without prejudice all claims against ACD Logistics for lack of personal jurisdiction under Rule 12(b)(2);

(2) In the alternative, dismiss Counts I, III, and IV against ACD Logistics under Rule 12(b)(6) for failure to state a claim; and

(3) Award ACD Logistics its reasonable attorneys' fees and costs to the extent authorized by Florida Statute § 772.11 upon entry of an order in its favor on Count I.

Dated: September 22, 2026

Respectfully submitted,

**James M. Slater**
James M. Slater, Esq. (FBN 111779)
SLATER LEGAL PLLC
9000 Dadeland Blvd. #1500
Miami, FL 33156
Tel.: (305) 523-9023
james@slater.legal

Kalpana Nagampalli, Esq. (*Pro hac vice*)
ESCA LEGAL LLC
55 Broadway, 3rd Floor
New York, NY 10006
Tel.: 347-519-4323
kalpana@esca.legal

*Attorneys for Defendant ACD Logistics, LLC*