**IN THE UNITED STATES DISTRICT COURT**

**FOR SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| AZG ENTERPRISES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ACD LOGISTICS, LLC a/k/a ACDL LLC, BENJAMIN ANTHONY, DANIEL CATONE, ARJUN DHILLON,<br><br>Defendants. | Case No. 0:26-cv-61499-WPD |

**DECLARATION OF DANIEL CATONE**
**IN SUPPORT OF ACD LOGISTICS, LLC'S**
**MOTION TO DISMISS AND MEMORANDUM OF LAW**

I, Daniel Catone, declare as follows:

1. I am over the age of 18, a citizen of the State of Wyoming, and competent to testify to the matters set forth in this declaration. I submit this declaration in support of ACD Logistics LLC's Motion to Dismiss and Memorandum of Law (the "Motion") to dismiss the First Amended Complaint filed by Plaintiff AZG Enterprises. I have personal knowledge of the facts set forth below.

2. I am a Member of ACD Logistics, LLC ("ACD"), a position I have held since November 1, 2021. I am familiar with ACD's corporate structure, business operations, and the facts giving rise to this litigation, including through my personal involvement in removing Arjun Dhillon ("Dhillon") as a Member of ACD and my review of ACD's business records kept in the ordinary course of business.

3. As of December 6, 2025, I have a 50% membership interest in ACD. Benjamin Anthony ("Anthony") has the other 50% membership interest. Dhillon currently has no membership interest based on his removal from ACD.

4. ACD is a Wyoming limited liability company with its principal place of business located at 254 E 2nd St, Powell, WY 82435-2711. ACD has never been incorporated or registered in the State of Florida.

5. ACD maintains no office, warehouse, employees, bank accounts, telephone listing, or registered agent in the State of Florida, and owns no real or personal property in Florida.

6. In November 2025, Dhillon was a Member with a 34% interest in ACD.

7. On December 6, 2025, the members voted to remove Dhillon as a member of ACD. Following that removal, Dhillon held no membership, management, officer, employee, agency, or representative role with ACD.

8. ACD's governance and business decisions were not entrusted solely to Dhillon. Anthony and I held remaining membership interests and participated in ACD's management and governance.

9. Before December 6, 2025, Anthony and I had begun reviewing concerns concerning Dhillon's handling of ACD funds and obligations, and were considering his removal from ACD.

10. Neither I nor, to my knowledge based on ACD's records and my role as a Member, ACD had knowledge of or participated in the communications or negotiations between Dhillon and AZG Enterprises, Inc. ("AZG") concerning the alleged transaction.

11. Upon information and belief, AZG exclusively communicated with Dhillon regarding purchase of certain trading cards.

12. Upon information and belief, Dhillon hid all communications and interactions with AZG from me and Anthony.

13. Neither I nor Anthony authorized Dhillon to represent that ACD possessed, controlled, or could sell particular merchandise to AZG. I am not aware of any ACD approval authorizing such a representation or the alleged transaction's material terms.

14. I have never communicated with AZG, either individually or on ACD's behalf.

15. Neither I nor, to my knowledge, any other ACD representative traveled to Florida in connection with the alleged transaction.

16. I did not participate in, approve of, or know the material terms of any alleged agreement between ACD and AZG, including any price, quantity, or delivery term, or alleged performance in Florida.

17. ACD does not maintain business records of a contract with AZG or of the alleged Dhillon and AZG communications during the relevant period.

18. I was not aware of the transaction at issue or Dhillon's alleged shortfall until Anthony informed me during the investigation into Dhillon's suspected misuse and commingling of ACD funds. I did not create, direct, or authorize shipping labels or shipment instructions for the alleged transaction.

19. On December 6, 2025, following a vote of all Members, Dhillon was involuntarily removed as a Member of ACD.

20. Anthony, Dhillon, and I executed a Separation Agreement, which was filed as Exhibit A to Anthony's prior declaration (ECF No. 33-3). The Separation Agreement made Dhillon's removal made effective December 6, 2025 and removed him from all positions as a Manager, Officer, employee, agent, or representative of ACD.

21. The Separation Agreement records Dhillon's admissions that, during his involvement with ACD, he commingled company and personal funds, used company funds for personal expenses without authorization, incurred debt obligations without full approval by ACD, and acted outside the scope of his authority.

22. As a result, Anthony and I acquired Dhillon's 34% membership interest. Dhillon no longer maintained any interest in ACD or any position at the company.

23. At the time of Dhillon's removal, I was not aware that Dhillon had acknowledged ACD owed any product, merchandise, or refund for the same to AZG.

24. Any acknowledgment Dhillon made on or after December 6, 2025 was made after his removal and without authority to act as ACD's Member, Manager, Officer, employee, agent, or representative.

25. I have no direct knowledge of the alleged written acknowledgment or the Personal Guarantee and Confidentiality Agreement that Dhillon allegedly executed with AZG on January 7, 2026. I did not participate in or authorize either document on ACD's behalf.

26. I have no personal knowledge of the agreement, and I did not participate in or authorize Dhillon to make the acknowledgement on ACD's behalf.

27. For the avoidance of doubt, Dhillon was not a Member of ACD after December 6, 2025. Any action Dhillon took after his removal was within his individual capacity and not as a Member of ACD or on behalf of ACD in any capacity.

28. ACD did not authorize him to make representations, acknowledgments, guarantees, repayment promises, or other commitments to AZG on ACD's behalf.

29. ACD's business records do not reflect previous business dealings, transactions, or sales with AZG outside of the alleged transaction.

30. I have no personal or direct knowledge of prior transactions or business dealings with AZG and have not acted on behalf of ACD to contract or transact with AZG.

31. I have not acted on ACD's behalf to contract or transact with AZG.

32. I have never personally or on behalf of ACD represented to AZG that I had possession of or access to the subject merchandise.

33. I have never personally or on behalf of ACD made false representations to AZG.

34. I had no knowledge of or involvement in an intent to obtain AZG's funds for distribution among ACD's members.

35. I have no personal or direct knowledge regarding Dhillon's promises, representations, acknowledgments, or admissions relating to a refund, repayment, or transfer of funds to AZG.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on September 22, 2026 in Powell, Wyoming.

Daniel Catone

Daniel Catone

# Catone Declaration ISO Motion to Dismiss Amended Compl.

Final Audit Report 2026-09-22

| | |
|---|---|
| Created: | 2026-09-22 |
| By: | Madison Marino (madison@esca.legal) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAq30tOQEgOsGHWAvQ-eHpHtUtNy5t0KnG |

## "Catone Declaration ISO Motion to Dismiss Amended Compl." History

Document created by Madison Marino (madison@esca.legal)
2026-09-22 - 4:07:13 PM GMT

Document emailed to Daniel Catone (drcatone@gmail.com) for signature
2026-09-22 - 4:07:17 PM GMT

Email viewed by Daniel Catone (drcatone@gmail.com)
2026-09-22 - 4:15:25 PM GMT

Document e-signed by Daniel Catone (drcatone@gmail.com)
Signature Date: 2026-09-22 - 4:15:46 PM GMT - Time Source: server - Signature Appearance Selected: MOBILE_IMAGE

Agreement completed.
2026-09-22 - 4:15:46 PM GMT